IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GREGORY BERNARD FLEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-62-JTA |
| | ) | (WO) |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Gregory Bernard Fleeton ("Fleeton") brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[2] The Commissioner denied Fleeton's application for Supplemental Security Income ("SSI"). The Court construes Fleeton's brief in support of the Complaint (Doc. No. 5) as a motion for summary judgment and the Commissioner's brief (Doc. No. 6) in opposition to the Complaint as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 7, 8.)

---

[1] Martin J. O'Malley was appointed Commissioner for the Social Security Administration on December 20, 2023 and, pursuant to Federal Rule of Civil Procedure 25(d), is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

[2] Document numbers as they appear on the docket sheet are designated as "Doc. No."

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Fleeton's motion is due to be DENIED and the Commissioner's motion is due to be GRANTED.

## I.      PROCEDURAL HISTORY AND FACTS

Fleeton[3] is an adult[4] male with a limited education[5] who previously worked as a construction worker, brick layer, landscape laborer, machine operator, poultry deboner, farm laborer and warehouse worker. (R. 22, 23.) He alleged a disability onset date of May 10, 2019, due to a "twisted lung" and gunshot wound to his back. (R. 17, 47, 339.)

On May 10, 2019, Fleeton filed an application for SSI under Title XVI of the Social Security Act. The application was denied initially and on reconsideration. (R. 130-136.) Fleeton requested an administrative hearing and, following the hearing, the Administrative Law Judge ("ALJ") denied Fleeton's request for benefits in a decision dated March 23, 2022. (R. 15-24.) Fleeton requested review by the Appeals Council and it denied review. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

On January 27, 2023, Fleeton filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 5, 6.) This matter is ripe for review.

---

[3] Citations to the administrative record ("R.") are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 4.)

[4] He was 44 years old at the time of the administrative hearing. (R. 42.)

[5] He obtained a GED. (R. 49.)

## II.   STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed de novo. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the

Commissioner for a rehearing if the court finds "either ... the decision is not supported by substantial evidence, or ... the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

## III.      STANDARD FOR DETERMINING ELIGIBILITY

An individual who files an application for SSI must prove that he is disabled. *See* 20 C.F.R. § 416.912(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.920(a).

Disability under the Act is determined under a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.920(a). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 416.972(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.920(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. (*Id.*) Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an

impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.909(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 416.920(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(f). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(e). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(g), 416.960(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Fleeton had not engaged in substantial gainful activity since the alleged onset date. (R. 17.) The ALJ determined that Fleeton suffers from the following severe impairments that

significantly limit his ability to perform basic work activities: gunshot wound with aorta dissection and thoracic fracture, hypertension, and obesity. (R. 17.)

The ALJ concluded that Fleeton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) The ALJ explained, in relevant part:

> [Fleeton's] disorders of the skeletal spine do not meet the requirements of listings 1.15 because the record does not show neuro-anatomic (radicular) distribution consistent with compromise of the affected nerve root(s), radicular distribution of neurological signs present during physical examination or on a diagnostic test, and findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine. In addition to the above, the evidence does not show an impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months and a documented medical need for: (1) for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, (3) or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. Typically, physical examinations revealed normal gait and station with 5/5 strength throughout.
>
> Section 4.00 was also considered in reference to the aorta dissection. However [Fleeton] does not meet or equal the requirements for any of the listed impairments in this section.
>
> Since the evidence indicated that [Fleeton's] Body Mass Index (BMI) was around 30, the undersigned has carefully considered Social Security Ruling 19-2p ... Despite [Fleeton's] BMI, musculoskeletal examinations have generally revealed no significant abnormalities. Motor strength, sensation, and reflexes were grossly intact and there were no neurological deficits. Cardiovascular examinations showed no murmurs, gallops, or rubs, and the claimant's lungs were clear bilaterally to auscultation and percussion. Although the evidence indicated few, if any, significant findings related to [Fleeton's obesity], this impairment is considered severe.

> In determining that [Fleeton] does not meet or equal a listing, the undersigned considered the opinion of the state agency medical consultant who evaluated this issue at the reconsideration level of the administrative review process and reached the same conclusion....

(R. 18.)

After consideration of the entire record, the ALJ determined Fleeton retains the RFC to perform light work,[6] except with the following limitations:

> [Fleeton] can perform frequent balancing. [He] can perform occasional climbing of ramps and stairs, kneeling, crouching, stooping, and crawling. [He] can perform frequent pushing and pulling with right lower extremity. [He] can never climb ladders, scaffolds, and ropes. [He] can have no work around unprotected heights, [but can have] occasional exposure to hazardous moving mechanical parts. [He] can perform no commercial driving. [He] can have occasional exposure to weather related humidity and wetness, extreme cold, extreme heat, and vibration.

(R. 19.) In determining the RFC, the ALJ found that Fleeton's statements regarding the intensity, persistence, and limiting effects of his symptoms are inconsistent with the medical evidence and other evidence of record. (R. 20.) Considering Fleeton's RFC, past relevant work as a chicken deboner, and other jobs that exist in the national economy, the ALJ found that Fleeton is not disabled under the Social Security Act. (R. 22-24.)

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b)

# V.   DISCUSSION

On appeal, Fleeton argues the ALJ erred by failing to order a second consultative examination. Fleeton contends a second consultative examination was warranted because (1) the lone consultative examination occurred four months subsequent to the disability alleged onset date and prior to some of his treatment records, and (2) the evidence in the record is not sufficient for the ALJ to evaluate the extent of his physical limitations or his cardiovascular impairment. The Court is unpersuaded by these arguments.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). But that obligation does not relieve Fleeton of his burden. "[T]he claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ's obligation to develop a full and fair record does not necessitate the ordering of a consultative examination in every case. *See* 20 C.F.R. § 416.912(b)ii.[7] An ALJ "need not order a consultative examination as long as the record contains sufficient

---

[7] "Obtaining a consultative examination. We may ask you to attend one or more consultative examinations at our expense. See 20 C.F.R. §§ 416.917 through 416.919t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. We may order a consultative examination while awaiting receipt of medical source evidence in some instances, such as when we know a source is not productive, is uncooperative, or is unable to provide certain tests or procedures. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources." 20 C.F.R. § 416.912(b)(ii).

evidence for [her] to make an informed decision." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)). *See Johnson v. Comm'r of Soc. Sec.*, 618 F. App'x 544, 551 (11th Cir. 2015) ("Where the record contains sufficient evidence to allow an informed decision ... the duty to fully and fairly develop the record does not impose the requirement to order a consultative examination."). "Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter,* 686 F. App'x at 713 (citing 20 C.F.R. § 416.919a(b)).

In addition, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In assessing the necessity for a remand, the court is "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id*. *See also Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 878–79 (11th Cir. 2012) (ALJ's failure to order a consultative psychological evaluation was not error because the record does not reveal an evidentiary gap that prejudiced the plaintiff). To establish an evidentiary gap in the record, the claimant must identify "what facts could have been submitted … that would have changed the outcome." *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991); *see also Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (claimant failed to show prejudice because she "does not explain how the

absence of ... [that evidence] precluded the ALJ from making an informed disability determination. Nor does she explain how such an assessment would have affected the ALJ's overall disability determination.").

Here, the Court concludes that the record contained sufficient evidence to reach an informed decision, and the record as a whole was sufficient for the ALJ to conclude that Fleeton was not disabled. *See* 20 C.F.R. § 416.919(b); *Ingram*, 496 F.3d at 1269. The relevant medical evidence consisted of records spanning nearly two years, including the records from three medical providers and the consultative examination by Dr. Oluyinka S. Adediji which occurred four months after Fleeton suffered his gunshot injury. (R. 412, 413-888.) The ALJ also considered the opinions of two non-examining state agency consultants (R. 22, 98-108, 111-23), neither of whom recommended a second consultative examination (R. 102, 117). From the ALJ's summary of the medical evidence in the hearing decision, it appears the ALJ considered all of the medical records that existed from Fleeton's alleged onset date through the date of the hearing decision. (R. 20-22.) Nothing before the Court shows that Fleeton challenged the accuracy of the medical records or the ALJ's analysis of these records.

Besides, Fleeton has failed to show that any unfairness or clear prejudice resulted due to the lack of a second consultative examination. He has not identified any inconsistencies in the record that would necessitate a second consultative examination or identified any evidentiary gaps. Nor does he show that his condition worsened after the lone consultative examination occurred or that he developed a new impairment or new limitations which necessitated another consultative examination. Nor does he identify what

facts would have been discovered in a second consultative examination that would have supported his disability claim and speculation does not suffice. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) (stating "[a] claimant cannot show prejudice by speculating that [h]e would have benefitted from a more comprehensive hearing"). Notably, there is no evidence in the record showing that during the administrative hearing Fleeton contended the medical evidence before the ALJ was inadequate or that further medical evidence was needed to evaluate his condition. *See Osborn v. Barnhart*, 194 F. App'x 654, 668–69 (11th Cir. 2006) (the contention that more medical evidence was necessary was unpersuasive because, among other reasons, counsel did not allege that the medical records were inadequate). Nor is there any evidence in the record showing that Fleeton requested the ALJ to order a second consultative examination or argued the same to the Appeals Council. (R. 86, 412.). Hence, prior to seeking judicial review, Fleeton apparently did not believe a second consultative examination was necessary and he has failed to persuade the Court that one is necessary now.

Further, Fleeton's sparse arguments are unsupported and underdeveloped. Citing to pages of the medical record, he argues that the consultative examination "was completed only four months after the [alleged onset date], and prior to significant portions of the medical record." (Doc. No. 5 at 7.) Fleeton is factually correct. Yet, he fails to offer any explanation for how these facts prejudiced him or resulted in reversible error. He also fails to cite any part of the Social Security Act, the regulations, or any authority which supports his argument that the temporal relationship between a claimant's alleged onset date and the date of the consultative examination or temporal relationship between the date of the

consultative examination and the subsequent medical records – without more – is detrimental to an ALJ's overall disability determination. Likewise, Fleeton's second one-sentence argument is just as undeveloped. He states, "Secondly, the medical evidence of record does not provide sufficient information for the ALJ to determine the extent of [his] physical limitations, or for the ALJ to appropriately determine whether [his] cardiovascular impairment meets or medically equals a listing under Section 4.00." (Doc. No. 5 at 7.) He makes no arguments on the merits of the issue and cites no specific authority or evidence which supports that conclusion.[8] Fleeton's statements are nothing more than conclusory

---

[8] Aside from generally citing the regulations, Fleeton cites *Pelt v. Barnhart,* 355 F. Supp. 2d 1288 (N.D. Ala. 2005) after making his conclusory statement. (Doc. No. 5 at 7.) Fleeton does not explain how the court's holding in *Pelt* is applicable to this case. In *Pelt,* the medical records of the claimant revealed "a long treatment history for depression" and the court noted that those records "are remarkable in the number of visits for … depression over an exceptionally long period of time." *Id*. at 1290. The court observed that despite the "extensive treatment history for depression, no consultative mental examination was performed." *Id*. The court reversed and remanded the Commissioner's decision, holding *inter alia* that "a consultative mental evaluation was required for an informed decision because the extensive treatment notes for depression are insufficient to establish the vocational impact of the [claimant's] mental impairment on her ability to work." *Id*. at 1291. It is unclear to this Court how *Pelt* can be viewed as supporting authority for Fleeton's statement. In sharp contrast to *Pelt,* a consultative examination was performed on Fleeton and therein Dr. Adediji noted that Fleeton "does not have the clinical history to support [his] diagnoses." (R. 728) (emphasis added). Consequently, the Court concludes that Fleeton's mere listing of *Pelt* after his conclusory second argument does not alter its finding that this argument is unsupported and underdeveloped. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) (finding arguments by claimant were forfeited because she "failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim"); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (finding claimant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin*., 835 F. App'x 538, 542 (11th Cir. 2020) ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

and unsupported arguments which the Court deems are waived. *See Davis v. Soc. Sec. Admin., Comm'r*, No 4:20-CV-346-LSC, 2021 WL 3887467, at *6 (N.D. Ala. Aug. 31, 2021) (holding claimant waived RFC argument because he failed to present arguments as to why the ALJ's RFC assessment is conclusory) (citing *Outlaw v. Barnhard*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006)); *Lewis v. Berryhill*, No. 1:17-CV-62-MW-GRJ, 2018 WL 1463725, at *5 (N.D. Fla. Mar. 1, 2018) ("[C]onclusory and unsupported arguments may be deemed waived.") (citing *N.L.R.B. v. McClain of Georgia, Inc*., 138 F.3d 1418, 1422 (11th Cir. 1998)). Accordingly, the Court finds no reversible error.[9]

## VI.   CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1.      The claimant's motion for summary judgment (Doc. No. 5) is DENIED.

2.      The Commissioner's motion for summary judgment (Doc. No. 6) is GRANTED.

3.      The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 22nd day of January, 2024.

_Jerusha J. Adams_

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

---

[9] Due to the waiver, the Court pretermits a discussion of whether substantial evidence supports the ALJ's determination.